Maurice Bacon Cooke and Mrs. Margaret Evans Cooke, husband and wife v. Commissioner.
Cooke v. Commissioner
Docket No. 3446.
United States Tax Court
1945 Tax Ct. Memo LEXIS 302; 4 T.C.M. (CCH) 204; T.C.M. (RIA) 45065; February 9, 1945
Stanleigh P. Friedman, Esq., for the petitioners. Francis X. Gallagher, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the income tax of petitioners for the year 1940 in the sum of $16,776.89. The sole issue is whether the sum of $55,920 received by petitioners in the taxable years from the sale of a patent, was taxable in its entirety as ordinary income or was taxable as a longterm capital gain. Findings of Fact Petitioners, who are husband and wife, reside in Plainfield, N.J., and filed their joint income tax return for the taxable year with the collector of internal revenue at Elizabeth, N.J. Petitioner, Maurice Bacon Cooke, will be hereinafter referred to as "petitioner." Petitioner was graduated *303 from Bucknell University where he received the degree of Bachelor of Science in chemical engineering in 1916, and a Master's Degree in 1921. From the time of his graduation in 1916 up to the date of the trial petitioner has been continuously a salaried employee, employed by various organizations as a chemist and a chemical engineer, as an industrial engineer and as a consultant in connection with the sale of machinery and plant construction. After graduation, petitioner was first employed by E. I. duPont Company as a control chemist until 1920. From 1920 to 1926 petitioner worked for the U. S. Bureau of Mines as an oil chemist. From January 1926 to December 1927, petitioner was employed by M. W. Kellogg Co. in helping put oil refineries into operation and observing their operation. From December 1, 1927, to May 1928, petitioner worked for Sinclair Refining Co., as an industrial engineer, and in this capacity was sent to France to inspect various plants. On leaving Sinclair petitioner entered the employ of Tidewater Oil Co. in May 1928, his job being "to improve processes in the plant." He was employed in the research control and manufacturing department of that company until August *304 1931. From August 1, 1931, through November 1939, petitioner was employed as an industrial and research engineer by Alco Products, Inc., a subsidiary of American Locomotive Co., which was then engaged in trying to get into the business of building oil refineries. From November 1, 1939, to February 1940, petitioner was employed by Okura Co., a Japanese organization, as a consultant to aid them in buying oil refining equipment. Immediately thereafter, petitioner was again engaged by M. W. Kellogg Co. as an industrial engineer to aid the sales force of Kellogg in sales of equipment, particularly to Japan and Russia. During petitioner's employment by the duPont Co. he made application for a patent on an invention having to do with a filter. This application was made at the request of his employer on papers prepared by it. By the terms of his employment any invention which he made belonged to the employer. There is no evidence as to whether a patent [was] issued upon this application. During petitioner's employment by the Bureau of Mines, he made an application for a patent on an oil purifying or fractionating tower. After several years this application went into interference with *305 an application owned by the Atlantic Refining Co. The latter company agreed to pay petitioner royalties, if any were received, in return for "a 50 percent interference." Three or four years later the Atlantic Refining Co. got into a second interference, and took over the other 50 percent of petitioner's interest in the application which was then assigned to the Atlantic Refining Co. At the request of the attorney for the company petitioner filed another application which was a division of the first application. Patents were eventually issued upon such applications to the company. At the time of the second assignment of petitioner's remaining interest in the application the Atlantic Refining Co. paid to petitioner $6,300 "advance royalties." During petitioner's employment with the M. W. Kellogg Co., he applied at the company's request for a patent covering a system of refrigeration. Petitioner does not know whether a patent [was] ever issued on that application. During petitioner's employment with the Tidewater Oil Co., he applied for a patent upon some experiments done for that company. This application was made at the request of the company. No patent was ever issued thereon. *306 In some way not made clear by the record this application came under the control of one Vickers but petitioner received nothing for the application on the invention covered by it. During his employment by Alco Products, Inc., petitioner filed application for four patents covering different variations of one invention. By the terms of his employment any invention made by him in the course of his employment was to belong to the company. The applications were made at the request of the company. The company prosecuted the applications for several years and then informed petitioner that the company was no longer interested in them. Thereafter the attorney for the company, at petitioner's expense, continued to look after these patent applications on petitioner's behalf. Four patents were issued to petitioner and he assigned three of them to his wife. One of these three was registered in Japan, and this patent was sold by petitioner and his wife to E. Noguchi in June 1940 in consideration of $56,120. The expenses of this sale amounted to $200. Before making this sale, petitioner first obtained the permission of the M. W. Kellogg Co., by whom he was then employed. By his contract of employment *307 he could not engage in any other business. During his employment by Alco Products, Inc., petitioner granted a license under the patent applications above referred to to the American Cyanamid Co. There is no evidence as to the consideration, if any, received therefor by petitioner. Petitioner never sold any patent except the one which he sold to E. Noguchi. Petitioner never used his patents as a means for procuring employment, nor was he ever employed because of the fact that he had patents or applications for patents. Every invention for which he filed an application for a patent was made after he had been employed. Petitioner had no laboratory in his home and did not make invention his hobby or source of recreation. None of petitioner's patents or applications for patents have ever, to his knowledge, been used by him or his employers. Petitioner, Margaret Evans Cooke, was not engaged in any business or profession during the taxable year. The patent sold by petitioners during the taxable year was not property held by them primarily for sale to customers in the ordinary course of trade or business. Opinion KERN, Judge: The issue presented in this case is whether the sale *308 in 1940 of the patent described in our findings was the sale of a capital asset as defined by section 117 (a) (1), I.R.C., [1] and therefore taxable under section 117 (b), or was the sale of property held by the taxpayer for sale in the ordinary course of his business. Our conclusion after a careful examination of all the evidentiary facts is that the sale was of a capital asset and not of property held for sale in the ordinary course of the taxpayer's business. The respondent, in his argument to *309 the contrary, relies heavily upon Goldsmith v. Commissioner, 143 Fed. (2d) 466, and Harold T. Avery, 47 B.T.A. 538. The Goldsmith case is clearly distinguishable upon its facts. The Avery case is more analogous to the instant one, but is also, in our judgment distinguishable to an extent which makes it inapplicable. The petitioner in the instant case was not a professional inventor and was not employed because of having made inventions in which his employer was interested. Whatever inventions were made by petitioner were made not as a personal hobby outside of his regular employment which had reached proportions equivalent to a personal business, but were made as incidents to and as a part of his regular employment. Pursuant to his contracts of employment the inventions were to be the property of his employers if they desired to have them. In most instances the employer took the necessary steps to protect the invention by patent or an application for a patent. The petitioner did not himself carry on the business of making inventions, acquiring for himself patents thereon and disposing of these patents by sale. Decision will be entered for the petitioners. *310 Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSS. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1);↩